Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DIOMEDES DELGADO CRUZ<br><br>Apelante<br><br>v.<br><br>DEPARTAMENTO DE SALUD; HON. RAFAEL RODRÍGUEZ MERCADO; ESTADO LIBRE ASOCIADO DE PUERTO RICO (ELA)<br><br>Apelado | TA2025AP00498 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala de ARECIBO<br><br>Caso Núm.: AR2019CV01095<br><br>Sobre: *Mandamus* |

Panel integrado por su presidenta la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.[1]

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

Comparece ante nos el señor Diomedes Delgado Cruz (apelante o señor Delgado Cruz) y nos solicita que revoquemos la *Sentencia* notificada el 1 de octubre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI o foro primario). [2] En el referido dictamen, el foro primario denegó la expedición del auto de *mandamus* y desestimó la causa de acción instada por el apelante en contra el Departamento de Salud de Puerto Rico (parte apelada o Departamento de Salud).

Por los fundamentos que exponemos a continuación, se confirma en parte y se revoca en parte el dictamen apelado.

I.

Se desprende del expediente ante nuestra consideración que, el 25 de enero de 2011, el señor Delgado Cruz fue destituido de su puesto de carrera

---

[1] Mediante OATA-2025-249 del 15 de diciembre de 2025 debido a la inhibición de la Jueza Rivera Marchand se modifica la integración del Panel.
[2] Entrada núm. 87 del expediente electrónico del portal del Sistema Unificado de Manejo y Administración de Casos (SUMAC TPI).

como Inspector de Salud Ambiental en el Departamento de Salud, por lo que apeló la destitución ante la Comisión Apelativa del Servicio Público (CASP). Allí, el 20 de agosto de 2012, la CASP emitió un laudo de arbitraje, en el cual declaró que la destitución del apelante fue injustificada y, por tanto, ordenó su reinstalación inmediata al puesto que ocupaba sin menoscabo a sus derechos de antigüedad, retiro, vacaciones, plan médico, bonificaciones, adiestramientos, aumentos de sueldo o cualquier otro derecho, beneficio o privilegio del cual disfrutaba previo a la destitución. En desacuerdo, el Departamento de Salud instó un recurso de revisión judicial ante el TPI. En su dictamen, el foro primario confirmó el laudo por lo que este advino final y firme.[3]

El 13 de mayo de 2013, ante el incumplimiento del Departamento de Salud, la Unión General de Trabajadores (UGT) presentó una querella en la CASP por práctica ilícita del trabajo. Solicitó ordenar al Departamento de Salud reinstalar al señor Delgado Cruz en su puesto de trabajo, según se dispuso en el laudo de arbitraje. **Sin embargo, durante el proceso de investigación, la UGT incumplió con el proceso y, consecuentemente, el recurso fue archivado.** Del mencionado recurso no recurrieron y este advino final y firme.

Así las cosas, el 18 de junio de 2019, el señor Delgado Cruz incoó la *Demanda[4]* de epígrafe, juramentada y enmendada al próximo día. Suplicó al TPI a que ordenara la expedición de un *mandamus* en contra del Departamento de Salud y el cumplimiento expedito del laudo de arbitraje. En particular, la reinstalación del apelante en su puesto de Inspector de Salud Ambiental y los beneficios adeudados.

Luego de emplazadas las partes y tras varios asuntos procesales que no son necesarios pormenorizar, el 6 de noviembre de 2020, el TPI notificó

---

[3] En el caso ante el TPI se le adjudicó el alfanumérico K AC2012-0956.

[4] Entrada núm. 1 en el expediente electrónico del portal del SUMAC.

una *Sentencia*[5] mediante la cual determinó que en el caso de autos aplicaba la paralización automática de la Ley PROMESA. En su consecuencia, ordenó el archivo sin perjuicio de la causa de acción presentada por el apelante.

Tiempo después, tras analizar el petitorio del apelante para la reactivación del pleito, el foro primario emitió una *Resolución Interlocutoria* en la que decretó el levantamiento total de paralización en el presente caso. Con tal pronunciamiento, relevó la sentencia de paralización. [6]

En cumplimiento con las órdenes del foro primario, las partes continuaron con los procedimientos. Entre tanto, sometieron un *Informe Preliminar entre Abogados y Abogadas* en el que, entre varias cosas, dirimieron cinco (5) controversias de hechos y de derecho.[7] A saber:

**Parte Demandante:**

a. Se ordene la reinstalación y el pago de sus haberes.

**Parte Demandada:**

a. No existe un deber ministerial que obligue a funcionario alguno del Departamento de Salud a cumplir con la reinstalación del demandante de conformidad con un Laudo de Arbitraje, por lo que no existen los elementos para emitir una orden de *Mandamus*.

b. La jurisdicción primaria exclusiva para determinar que la agencia se encuentra en incumplimiento de un Laudo de Arbitraje y compeler el cumplimiento recae en el foro administrativo, por lo que el Tribunal no cuenta con jurisdicción para emitir una orden a esos fines en el presente caso.

c. La reinstalación del demandante no es posible ante el hecho de que el demandante se encuentra incapacitado por la Administración del Seguro Social.

d. El demandante no ha puesto en posición a la agencia para cumplir con el Laudo de Arbitraje sin violentar leyes federales que requieren acomodo razonable y notificar a la Administración del Seguro Social que se está reclutando a una persona que se encuentra jubilada por incapacidad.

Pendiente lo anterior, el foro primario celebró el juicio en su fondo. Allí, comparecieron ambas partes, quienes tuvieron la oportunidad de

---

[5] *Íd.*, Entrada núm. 27.
[6] *Íd.*, Entrada núm. 60.
[7] *Íd.*, Entrada núm. 70.

presentar prueba testifical y documental. Una vez expuestas sus posiciones, las partes sometieron el caso para la determinación del TPI.

Así las cosas, el 3 de abril de 2025, el Departamento de Salud solicitó al TPI la desestimación de la causa de acción presentada en su contra a tenor con la Regla 10.2 de Procedimiento Civil.[8] Argumentó que, el recurso interpuesto no era el adecuado en derecho por no existir un deber ministerial del Departamento de Salud para reinstalar al apelante en cumplimiento con las disposiciones de un laudo. Añadió que, la CASP es quien ostenta jurisdicción primaria exclusiva para dirimir las controversias al amparo de la Ley Núm. 45. Por tanto, concluyó que, ante la inconsecuente negligencia del apelante, los términos para recurrir al foro judicial expiraron y, por consiguiente, el TPI carece de jurisdicción para atender el recurso de *Mandamus*.

El señor Delgado Cruz presentó una *Oposición a la Moción de Desestimación*[9]. En síntesis, sostuvo que no procedía la desestimación por dejar de demostrar la inexistencia de un remedio justificado en derecho. Ello por cuanto, el apelante ostenta un derecho, a través de un laudo final y firme, que no ha sido ejecutado. Por consiguiente, la Rama Ejecutiva es quien tiene, en última instancia, la potestad para ordenar al Departamento de Salud el cumplimiento del Laudo a través del recurso extraordinario presentado. Justipreciados ambos escritos, el 9 de septiembre de 2025, el foro primario dictaminó que no procedía la desestimación de la causa de acción. [10]

Más adelante, el Departamento de Salud presentó una moción con el fin de contestar la demanda incoada por el apelante. En suma, argumentó que el TPI no ostentaba jurisdicción para atender el caso de epígrafe, en cambio, le correspondía a la CASP dirimir la controversia relacionada al

---

[8] *Íd.*, Entrada núm. 67.
[9] *Íd.*, Entrada núm. 73.
[10] *Íd.*, Entrada núm. 77.

laudo. Sin embargo, el foro primario denegó las alegaciones por entenderlas tardía.

Finalmente, una vez desfilada y aquilatada la prueba, el TPI notificó la sentencia apelada. En esta, consignó, veinticinco (25) determinaciones de hechos, de las que destacamos las siguientes:

[…]

6. El 25 de enero de 2011, el demandante recibió una destitución del puesto que ocupaba en el Departamento de Salud.

7. Una vez recibió la carta de destitución, el demandante acudió a la Unión General de Trabajadores para que apelaran su caso.

8. La Unión General de Trabajadores acudió a la Comisión Apelativa de Servicios Público para apelar la destitución del puesto de carrera de la parte demandante.

9. La Comisión Apelativa Del Servicio Público en el caso Departamento De Salud (agencia) vs. División De Empleados Públicos De La Unión General De Trabajadores (Unión), caso AQ-11-086-L-12-254, emitió el 20 de agosto de 2012 un laudo sobre la destitución del Sr. Diomedes Delgado Cruz, disponiéndose lo siguiente:

> "La destitución Del Sr. Diomedes Delgado no estuvo justificada. Se ordena la reinstalación inmediata del querellante, Sr. Diomedes Delgado, a su puesto dentro del Departamento de Salud, sin menoscabar sus derechos de antigüedad, retiro, vacaciones, plan médico, bonificaciones, adiestramientos, aumentos de sueldo o de cualquier otro derecho, beneficio o privilegio del cual desfrutaba previo a ocurrir la destitución. Copia de este Laudo la Agencia deberá incluirlo en el expediente de personal del Sr. Delgado.
>
> Se ordena a la Agencia que en un término no mayor de treinta (30) días calendario, a partir de ser reinstalado el querellante en su puesto de carrera, realizar el pago correspondiente a todos los salarios, beneficios marginales y cualquier otra remuneración económica o en metálico aplicables a todos los miembros de la Unidad Apropiada, del cual tenía derecha el querellante y dejo de recibir como consecuencia de la destitución.
>
> Se ordena a la Agencia que en un término no mayor de quince (15) días calendario, luego de reinstalar al querellante a su puesto de carrera y haber realizado el pago correspondiente, le notifique de manera escrita al representante legal de la Unión el cumplimiento de lo aquí ordenado. Deberá incluir en el escrito la fecha de pago, cantidad pagada al empleado y anejar cualquier otra información o prueba documental que demuestre el cumplimiento de lo aquí ordenado."

10. Ante el incumplimiento del Departamento de Salud con el laudo emitido, la parte demandante, a través de su representante legal de la Unión General de Trabajadores,

presentó una Moción De Cargo Practica Ilícita ante la Comisión Apelativa Del Servicio Público.

11. El 21 de mayo de 2013 la Comisión Apelativa Del Servicio Público emitió el documento titulado "Notificación de Radicación De Cargo De Práctica Ilícita Contra Agencia". En este se relaciona que la División de Empleados Públicos de la Unión General De Trabajadores radicaron un cargo de práctica ilícita contra el Departamento de Salud; que se le asignó a la agente Ruth Vázquez Juan la atención de ese cargo. Se les apercibió que las partes deben tener total cooperación a los requerimientos de la agente asignada, a ser específicos y exactos al someter la información requerida, a ser puntuales, diligentes y cooperadores con los procedimientos.

12. Igualmente, la parte demandante hizo gestiones en las Oficinas del Procurador del Ciudadano (Ombudsman) con el fin de que le asistiesen para que se cumpla el laudo.

13. Con fecha del 13 de mayo de 2014, el Sr. José A. Rivera Soto, Director de la División de Investigación de la Comisión Apelativa del Servicio Público, suscribió una comunicación dirigida a la División de Empleados Públicos de la Unión General de Trabajadores, donde le comunica que ante la inacción de presentar su postura en cuanto a los alegados hechos sobre cargos por práctica ilícita en cuanto al incumplimiento del laudo emitido a favor del demandante; presentar evidencia documental para sustentar la misma, una lista de testigos y una copia del Convenio Colectivo, y, por ende, mostrar su interés en que las alegaciones del cargo fueran investigadas, se procedería a no emitir una querella basada en este cargo y desestimar su solicitud.

14. La misiva antes relacionada hace relación de comunicaciones previamente realizadas sobre el mismo requerimiento, fechadas los días 3 de junio y 23 de diciembre de 2013.

15. Por su parte, La Oficina del Procurador del Ciudadano realizó gestiones para indagar el status sobre la Moción De Cargo Práctica Ilícita presentada por la Unión General de Trabajadores contra el Departamento de Salud. De las gestiones, surge que el 13 de mayo de 2014 el caso fue desestimado por la Comisión de Apelación; desestimación que fue notificada a las partes; que se emitió notificación de Cierre y Archivo el 5 de junio de 2014; y que la Unión no solicitó reconsideración ni se expresó.

16. Posteriormente, la parte demandante, por conducto del Lcdo. Edgardo Santiago Llorens, le envió carta al Dr. Rafael Mercado, Secretario del Departamento de Salud, fechada el 24 de mayo de 2019. El propósito de la carta era requerirle al Departamento de Salud la reinstalación al puesto del demandante y el pago de los haberes dejados de devengar, conforme al laudo que la Comisión Apelativa de Servicios Públicos emitió. Se le informo que un incumplimiento de lo anterior conllevaría la presentación de una acción legal de Mandamus en su contra.

17. La parte demandante, por conducto del Lcdo. Edgardo Santiago Llorens, le envió carta al Hon. Raúl Maldonado Gaudier, Secretario del Departamento de Hacienda, fechada el 24 de mayo de 2019. El propósito de la carta era requerirle la reinstalación al puesto que ocupaba el demandante en el Departamento de Salud y el pago de los haberes dejados de devengar, conforme al laudo que la Comisión Apelativa de

Servicios Públicos emitió. Se le informo que un incumplimiento de lo anterior conllevará la presentación de una acción legal de Mandamus en su contra.

18. El 24 de mayo de 2019 el demandante, por conducto del Lcdo. Edgardo Santiago Llorens, le envió una carta al Departamento de Justicia, por conducto de la Secretaria de Justicia, Hon. Wanda Vázquez, para requerir la reinstalación al puesto que ocupaba el demandante en el Departamento de Salud y se le paguen los haberes dejados de devengar, conforme a un laudo que la Comisión de Servicios Públicos emitió. Se le informó que un incumplimiento conllevará la presentación de una demanda en su contra.

19. El Departamento de Salud nunca [h]a cumplido con el laudo, ni le ha comunicado las razones del porqué de su incumplimiento al demandante.

20. La parte demandante recibe los beneficios de la Administración del Seguro Social. El 28 de enero de 2011 fue la fecha en que la agencia lo incapacito, según sus reglas. El primer mes de derecho a beneficios fue en julio de 2011. La notificación fue hecha el 30 de enero de 2012.

21. El primer pago recibido por beneficios del seguro social fue el retroactivo computado desde julio 2011 hasta el diciembre de 2011, menos los honorarios de abogados ($4388.00 - $1,097.00), por la cantidad de $3,291.00. Los beneficios mensuales a partir de enero de 2012 son por la cantidad de $753.00.

22. La parte demandante se incapacitó por el seguro social por condiciones de salud física; de movilidad.

23. No obstante, lo anterior y sin que esto constituya un impedimento a los beneficios recibidos por el seguro social, el demandante se siente con estamina para realizar las funciones del puesto de carrera que ocupaba en el Departamento de Salud; su salud física está muy bien.

24. El demandante no necesita acomodo razonable por condición médica.

25. Desde que lo destituyeron hasta el presente, el demandante no ha trabajado.

Asimismo, el foro primario dictaminó que, la CASP es quien posee jurisdicción primaria exclusiva para ordenar el cumplimiento de orden, según requiere el Artículo IV, Sección 404(B), del Reglamento de la CASP. Por consiguiente, determinó que estaba impedido de atender el recurso extraordinario ante su consideración sin antes agotar los remedios estatutarios requeridos por la CASP. Además, reafirmó que, por la inacción de la UGT, la causa de acción fue desestimada y posteriormente prescrita.

Insatisfecho, el 30 de septiembre de 2025, el señor Delgado Cruz compareció ante esta Curia mediante el presente recurso y le imputa lo siguiente al foro primario:

> Erró el TPI al aplicar incorrectamente doctrinas como la jurisdicción primaria y/o el agotamiento de remedios administrativas a una solicitud de ejecución de un Laudo Arbitral que es final, firme e inapelable desde el 19 de septiembre de 2012, confundiendo así la etapa de adjudicación administrativa (ya concluida y firme) con la etapa de ejecución judicial (aquí solicitada).
>
> Erró el TPI al determinar que el recurso extraordinario de *Mandamus* no procede en este caso para compeler a una agencia gubernamental (Departamento de Salud) al cumplimiento de un deber ministerial, claro, específico y mandatorio, impuesto por un Laudo firme emitido por una entidad cuasi-judicial (CASP), dejando así al Apelante sin un remedio adecuado y efectivo en derecho ante el incumplimiento crónico y manifiesto de la agencia por más de una década

En respuesta, la parte apelada comparece mediante su *Alegato*. En esencia, reproduce los fundamentos sobre los cuales sustentó su petitorio dispositivo y añade que, al existir un recurso adecuado en ley para que la parte apelante pueda plantear su reclamo, el *mandamus* resulta improcedente. Por consiguiente, nos solicita que confirmemos el dictamen apelado.

Con el beneficio de los planteamientos de ambas partes, resolvemos.

## II.

### A. El Recurso de *Mandamus*

El *mandamus* es un recurso extraordinario "altamente privilegiado" y discrecional, dirigido a una persona natural o jurídica, con el fin de exigir judicialmente el cumplimiento de un deber ministerial en función del cargo que ocupa.[11] Quiere decirse pues que está de por medio una obligación cierta que no admite el ejercicio de discreción en su cumplimiento. *Bhatia Gautier v. Gobernador,* supra, a la pág. 75, al citar a *AMPR v. Srio. Educación*, 178 DPR 253 (2010).

---

[11] Véase, Artículo 649 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA sec. 3421; *Bhatia Gautier v. Gobernador*, 199 DPR 59 (2017).

A través del auto de *mandamus* se requiere "a una persona natural o jurídica el cumplimiento de un deber ministerial dentro de las atribuciones o deberes del cargo que ocupa." *Kilómetro 0 v. Pesquera López et al.*, 207 DPR 200, 214 (2021). Por tanto, este recurso solamente procede para exigir el cumplimiento de un deber impuesto por ley o calificado como "ministerial" el cual no admite discreción en su ejecución, sino que es mandatorio e imperativo. *Íd.*, citando a *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972 (2020).

Cabe enfatizar que, por su naturaleza extraordinaria, la expedición del *mandamus* debe utilizarse cuando no hay otro remedio ordinario dentro del curso de la ley para hacer cumplir el deber ministerial. El requisito fundamental para expedir el recurso de *mandamus* reside, pues, en la constancia de un deber claramente definido que debe ser ejecutado, el impacto del recurso en el interés público envuelto, sopesado con la posible intromisión indebida en las gestiones gubernamentales y su efecto sobre los derechos de terceros. *Kilómetro 0 v. Pesquera López et al., supra*, a la pág. 215.

B. **La Jurisdicción de la CASP**

La Ley Núm. 182-2009, conocida como la Ley de Reorganización y Modernización de la Rama Ejecutiva 2009, 3 LPRA sec. 8821 *et seq.*, creó el Plan de Reorganización Núm. 2 de 2010, aprobado el 26 de julio de 2010, mejor conocido como el Plan de Reorganización de la Comisión Apelativa del Servicio Público, 3 LPRA Ap. XIII. Mediante este último se estableció la nueva CASP, fusionándose la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP).

Específicamente, la CASP es un foro administrativo cuasi-judicial perteneciente a la Rama Ejecutiva que se especializa en asuntos obrero-patronales y del principio de mérito. *Hernández Feliciano v. Municipio de*

*Quebradillas,* 211 DPR 99, 112 (2023); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1051 (2013).

La CASP es un ente adjudicativo creado con jurisdicción apelativa exclusiva para atender y adjudicar las apelaciones de los empleados públicos del Gobierno de Puerto Rico. *Hernández Feliciano v. Municipio de Quebradillas*, al citar el Art. 12 del Plan de Reorganización de la CASP.[12] En lo pertinente, dicho artículo reza como a continuación se transcribe:

La Comisión tendrá jurisdicción primaria exclusiva sobre:

a) **las reclamaciones surgidas como consecuencia de acciones o decisiones del patrono en violación a las disposiciones de la Ley Núm. 45 de 1998, según enmendada**;

b) las reclamaciones surgidas como consecuencia de acciones o decisiones de las organizaciones laborales, sindicales u obreras y de los representantes exclusivos en violación a las disposiciones de la Ley Núm. 45 de 1998, según enmendada;

[…]

Ningún caso podrá ser radicado luego de transcurridos seis (6) meses de los hechos que dan base al mismo, excepto que la parte contra quien se haya radicado, intencionalmente haya ocultado los hechos que dan base al mismo o que durante el período de seis (6) meses luego de los hechos, la parte promovente haya estado legalmente incapacitada para radicarlo, o que no tuvo conocimiento de los hechos durante ese período. En estos casos, la Comisión determinará si la dilación en radicar el mismo es razonable conforme a los principios generales de incuria. (Énfasis nuestro)

De lo anterior se desprende que la CASP es el foro cuasi-judicial con jurisdicción **exclusiva** para entender las reclamaciones surgidas al amparo de la Ley Núm. 45-1998,[13] conocida como la Ley de Relaciones del Trabajo del Servicio Público. Sin embargo, el artículo 10 de la referida ley dicta la jurisdicción de los tribunales en atención a las órdenes y resoluciones emitidas por la CASP. En particular, la sección 10.2 lee de la siguiente manera:

El Tribunal de Primera Instancia tendrá jurisdicción para:

(a) Ordenar que se pongan en vigor la órdenes y resoluciones finales de la Comisión, una vez revisadas por el Tribunal de

---

[12] 3 LPRA Ap. XIII, Art. 12.
[13] 3 L.P.R.A. *secs. 1451 et seq.*

Apelaciones, en aquellos casos en que se haya recurrido a ese Tribunal de conformidad con lo dispuesto en esta Ley.

(b) **Ordenar que se pongan en vigor las órdenes y resoluciones finales de la Comisión de las que no se haya recurrido ante el Tribunal de Apelaciones, una vez transcurridos los términos de reconsideración ante la Comisión y de revisión ante el Tribunal Supremo.**

(c) Expedir cualquier orden provisional de remedio o prohibición que la Comisión considere necesaria.

(Énfasis nuestro)

Así pues, y con el fin de implementar las disposiciones de la Ley Núm. 45-1998, *supra*, se creó el Reglamento Número 6385 de la Comisión de Relaciones del Trabajo del Servicio Público (Reglamento 6385). Este, dicta el proceso a seguir por el cual la CASP resolverá los asuntos ante su consideración. Su artículo VII procura los procedimientos de arbitraje sobre quejas y agravios. Particularmente, la Sección 716 establece que el laudo emitido por el árbitro será final y obligatorio entre las partes sin derecho a reconsideración. Sin embargo, ante el incumplimiento con las disposiciones de un laudo, la parte beneficiada tendrá derecho a radicar un cargo por práctica ilícita en atención a los dispuesto en las secciones 9.1(d) y 9.2(d) de Ley 45-1998.

En lo ateniente a esto último, la Sección 9.1(d) del Artículo 9 de la Ley Núm. 45-1998 establece como una práctica ilícita del patrono, lo siguiente:

(d) **No aceptar o no cumplir el laudo de un árbitro o panel de árbitros después de haberse sometido al procedimiento de arbitraje. Sin embargo, la Comisión podrá desestimar cualquier formulación de cargos en la que se impute una violación de este inciso si el representante exclusivo con que se llegó al acuerdo de someter la controversia a arbitraje a su vez es hallado incurso en una violación del laudo o no ha cumplido con una orden relativa a alguna práctica ilícita.** 3 LPRA sec. 1452b. (Énfasis nuestro)

Cónsono con lo anterior, el Reglamento 6385 atiende el proceso a seguir para la formulación de cargos ante la CASP, que comienza con una investigación. La Sección 408 del mencionado reglamento dispone lo siguiente en cuanto a las facultades investigativas de la CASP:

[…]

C. En todos los casos bajo este, si la determinación de la C.R.T.S.P. es que no existe causa probable para encontrar que se violó la ley, se le notificará a la parte que radicó el cargo y se le dará la opción de retirar el mismo. Si la parte lo retira, será sin perjuicio. Si no lo retira, el cargo se desestimará. En aquellos casos en que el promovente no esté de acuerdo con la determinación de desestimar todas o algunas de las alegaciones, tendrá siete días para solicitar reconsideración a la Comisión. El escrito de reconsideración deberá especificar todos los puntos en controversia; describir la evidencia que se alega sostiene las alegaciones e ilustrará a la Comisión sobre por qué debe existir causa probable para encontrar que se ha violado la ley.

D. Las determinaciones de emitir o no una querella no serán revisables ante ningún tribunal. […]

III.

En la presente causa, el señor Delgado Cruz señala que erró el foro primario al desestimar el recurso ante su consideración por falta de jurisdicción al aplicar incorrectamente la doctrina de agotamiento de remedios en solicitud de ejecución de un laudo arbitral. Asimismo, y como segundo planteamiento de error, arguye que incidió el TPI al denegar el recurso de *mandamus* instado en virtud de la Regla 54 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 54. En esencia, el apelante cuestiona que el foro primario haya denegado el recurso de *mandamus* por no ser el vehículo procesal adecuado.

Según arriba explicamos, a tenor con la Sección 11 del Plan de Reorganización Núm. 2, *supra*, la CASP posee jurisdicción primaria exclusiva para atender reclamaciones por violación a las disposiciones de la Ley Núm. 45-1998. En atención a ello, existe un proceso de arbitraje para resolver las controversias de acciones patronales, en el cual se emite un laudo que será final y obligatorio entre las partes.

En caso de incumplimiento del laudo, como también arriba mencionamos, el peticionario podrá solicitar un proceso de práctica ilícita en la CASP con el fin de ordenar su cumplimiento. El mismo, dispone una etapa preliminar de investigación para determinar si existe causa. De esa manera, si el investigador de un cargo entiende que no hay base para pasar

del cargo a la querella, le notificará a la parte que presentó el cargo para que lo retire sin perjuicio de volver a presentarlo.[14] Si el cargo no se retira, se desestimará con derecho a reconsideración, pero sin derecho a revisión judicial.

Al estudiar el legajo apelativo, advertimos que el laudo emitido en su día en el caso por un árbitro de la CASP trata de una decisión final vinculante.[15] Entiéndase pues, que el señor Delgado Cruz cuenta con el beneficio de una decisión emitida por un juzgador neutral, y en ese sentido, tiene derecho a recurrir ante el Tribunal de Primera Instancia para que se ordene el cumplimiento de las resoluciones finales emitidas por la CASP. No encontramos en las disposiciones del Reglamento 6385, ni en aquellas de la Ley 45-1998, lenguaje alguno que nos permita concluir que, ante el incumplimiento de un laudo final y firme, previo a acudir al auxilio de los tribunales es un requisito jurisdiccional acudir a la CASP y presentar un reclamo por prácticas ilícitas.

En primer lugar, el único requisito jurisdiccional establecido por el Reglamento 6835 está contenido en su Sección 507 a los efectos de establecer que previo a solicitarse revisión judicial de una resolución u orden final de la Comisión, debe solicitarse su reconsideración. O sea, la Sección 408 del reglamento que regula lo concerniente al proceso investigativo sobre prácticas ilícitas no impone requisito jurisdiccional alguno que impida acudir a los tribunales. Segundo, la Sección 9.3 de la Ley 45-1998 que atiende el procedimiento para ventilar alegaciones sobre prácticas ilícitas, indica que cualquier agencia, representante exclusivo o persona interesada **podrá** imputar la existencia de una práctica ilícita mediante la presentación de una querella ante la comisión.[16] En virtud de ello, resolvemos que no

---

[14] Es menester señalar que la relación fáctica que sustenta el recurso no revela que la CASP invitara a la UGT a retirar el cargo sin perjuicio, según la sección 408 del Reglamento 6385 instruye se haga, si no que procedió a sin más desestimarlo.
[15]
[16] El propio vocablo incluido en la Ley 45-4998 implica discreción en la decisión de acudir y someter la querella.

existía impedimento alguno en el caso para que el señor Delgado Cruz acudiera directamente ante el TPI a solicitar el cumplimiento del laudo emitida a su favor que hoy es final y firme. A tales fines, opinamos que el primer error se cometió.

Similar conclusión, empero, no alcanzamos en cuanto al segundo error señalado. Conforme pormenorizamos en el acápite anterior, el auto de *mandamus* es un recurso altamente discrecional que solamente debe ejecutarse cuando resulte de un deber ministerial dentro de los deberes del cargo que ocupa. Además, rige cuando no exista otro remedio ordinario que ponga en vigor lo peticionado. *Kilómetro 0 v. Pesquera López et al., supra.*

En el caso de autos, existe un remedio estatutario para hacer valer los derechos del apelante, por lo que, como correctamente resolvió el foro primario, no correspondía expedir un recurso discrecional de tan alto recelo. No obstante, ello no supone que el apelante quedó desprovisto por nuestros tribunales.

Tal cual citamos, existe un remedio mediante una petición de orden al amparo del acápite 10.2(b) de la Ley Núm. 45-1998. Así pues, y en aras de hacer justicia y garantizar el acceso a la misma, si bien confirmamos la determinación judicial de no emitir el *mandamus* por ser improcedente en derecho, revocamos el decreto de falta de jurisdicción y autorizamos la continuación de la causa de epígrafe bajo el Artículo 10.2(b) de la Ley 45.

## IV.

Por los fundamentos que anteceden, confirmamos la *Sentencia* apelada únicamente en cuanto al vehículo procesal de *mandamus* y le revocamos, en lo correspondiente a la falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones